Holdshoe, Appellant, *v.* Whinery, d. b. a. Whinery's Landing, Appellee.

[Cite as Holdshoe v. Whinery, 8 Ohio App. 2d 305.]

(No. 869—Decided December 7, 1966.)

*Mr. George A. Aronson* and *Mr. Bernard Fineman,* for appellant.

*Messrs. Pfau, Pfau & Comstock* and *Mr. Lawrence R. Springer,* for appellee.

LYNCH, J. Plaintiff, appellant herein, commenced an action in the Court of Common Pleas for personal injuries sustained on land owned and operated by defendant, appellee herein, as a picnic area. The case came on for a jury trial, and, at the end of plaintiff's opening statement, the court sustained defendant's motion for a directed verdict. Judgment was entered by the court on the directed verdict, and plaintiff perfected an appeal on questions of law.

The issue in this case is whether plaintiff's petition and opening statement state a cause of action against defendant.

The pertinent parts of plaintiff's petition are as follows:

"Plaintiff alleges that said defendant, * * * owned, operated and controlled land at or near what is called Guilford Lake, * * *. That said defendant operated said land as an amusement park and that the general public was invited to use the defendant's grounds for an admission fee paid to the defendant.

"That * * * this plaintiff was lawfully on the grounds of the defendant, for which a fee had been paid to the defendant, and this plaintiff was in the act of eating at a picnic table provided by the defendant when an unattended automobile owned by another patron of the defendant, and parked on the incline downgrade suddenly started in motion down said grade and struck this plaintiff and injured her as hereinafter alleged.

"That the negligence of the defendant consisted in maintaining the park grounds in a dangerous and defective condition in that it was necessary for patrons with automobiles to leave their vehicles wherever they choose; in not maintaining and providing a parking lot; in failing to give warning to patrons of the hazard from parked cars known or should have been known to the defendant to exist; in failing to provide protection to patrons; in failing to regulate or control the parking of cars by patrons; permitting automobiles to be parked on his premises where they were likely to cause injuries to patrons; fail-

ing to have on duty sufficient employees or personnel to control the parking of vehicles and to prevent the activities of patrons in parking their vehicles from endangering the lives of other patrons.''

Plaintiff's counsel, in his opening statement, stated that plaintiff had never been to this picnic area prior to the day of this accident; that she went with her husband to this place for a picnic; that her husband paid fifty cents to defendant who assigned them to a picnic table on the lower part of the hill; that there were approximately 500 cars in the area on this day, with approximately 1,200 to 1,500 people; that there were several other picnic tables; that the car which caused plaintiff's injuries was perched on the upper part of the hill facing downgrade near a picnic table approximately 98 feet from plaintiff's picnic table; that defendant was sitting at her picnic table talking to another person when the car hit her picnic table; that defendant had about twenty years of experience in operating these picnic grounds; that defendant had built the two picnic tables at issue in this case; that prior to this accident a car broke away and drifted into one of the cottages; that defendant was aware of the prior accident; that defendant provided no parking area for cars and provided no barricade of any type to protect the patrons from automobiles; and that he did not regulate or control the parking of cars at the picnic grounds.

Defendant in his answer admitted many of the facts in this case.

We are unaware of any Ohio case directly in point on this issue. The only case directly in point, that has come to our attention, is *Marquardt* v. *Orlowski*, 18 Ill. App. 2d 135, 151 N. E. 2d 109, which allowed recovery from operators of a picnic grove for injuries to a patron who was struck by an automobile rolling down hill, on the ground of failure to provide a safe parking place for automobiles or to take measures directed toward proper supervisory direction and control of parking by other patrons.

The owner or occupier of premises, who invites another to enter upon the premises for some purpose of interest or advantage to such owner or occupier, owes to the person so invited a duty to use ordinary care to have his premises in a reasonably

safe condition for use in a manner consistent with the purpose of the invitation. *Lampe* v. *Magoulakis,* 159 Ohio St. 72, at page 75. See 39 Ohio Jurisprudence 2d 566, Negligence, Section 52.

We hold that the parking of a motor vehicle on an incline is a potential hazard to pedestrians who are below the point where such motor vehicle is parked, and that the owner of a picnic ground situated on hilly terrain in the exercise of ordinary care for the safety of his patrons on a lower level is required to provide safe and secure parking for motor vehicles that are present on an incline at a higher level.

Potential energy is the energy a body possesses because of its position or state of strain.

The parking of a motor vehicle on an incline creates a source of potential energy because of gravity which causes bodies to fall with accelerating motion. The amount of potential energy such a motor vehicle possesses is in proportion to the weight of the motor vehicle and its relative height on the incline.

If no restraint was put on a motor vehicle parked on an incline, gravity would cause the motor vehicle to roll down the incline at an accelerating speed. Therefore, it is the duty of the person parking a motor vehicle on an incline to exercise reasonable care to restrain the pull of gravity by putting on his brakes or by taking other measures so that the motor vehicle will remain stationary.

Section 4513.20, Revised Code, requires that all motor vehicles have brakes, that all brakes be maintained in good working order, and that such brakes be adequate to control the movement of and to stop and hold such motor vehicle when operated on a highway.

Brakes are standard equipment for all motor vehicles and are regularly used in the operation of all motor vehicles. The efficiency of the brakes on any vehicle depends on the use to which they are put and the interval of time from when the motor vehicle was purchased or the brakes were relined or repaired.

An operator of a motor vehicle may be unaware that the efficiency of his brakes has declined to a point that there is a delicate balance in their ability to restrain the pull of gravity when such vehicle is parked on an incline. If the motor vehicle

stopped on the incline when the brakes were applied and remained stationary, the operator of the motor vehicle could reasonably assume that his brakes were working, unless he had reason, because of prior operation of the motor vehicle, to know that the brakes were defective.

However, the pull of gravity has a continuing strain on a motor vehicle parked on an incline. A jolt to the motor vehicle from any source whatsoever, whether it be a person or another car, could be sufficient to overcome the ability of some brakes to restrain a motor vehicle parked on an incline and start it rolling down an incline. At times, a motor vehicle that has been parked on an incline for some time with its brakes on has started to roll down the incline with no additional outside force applied except the pull of gravity. The incidence of this happening may not be too high. However, it can and does happen. When a large number of motor vehicles are parked on an incline at frequent intervals, it is forseeable that an unattended motor vehicle parked on an incline for some length of time with its brakes on will roll down the incline because of the pull of gravity. This is a definite hazard to pedestrains who are below the point where a motor vehicle is parked on an incline.

Defendant cites several cases which hold that a proprietor of a place of business, or an amusement place, is not an insurer of an invitee against personal injuries inflicted by other persons on the premises, and is not liable for wrongful or negligent acts of third persons not under his control, which he could not reasonably have anticipated or guarded against. Some of the cited cases arose from actions of crowds of people. *Cleveland Ry. Co.* v. *Barragate,* 125 Ohio St. 190; *Youngstown & Suburban Ry. Co.* v. *Faulk,* 114 Ohio St. 572; *Farrell* v. *Loew's Ohio Theatres,* 25 Ohio Law Abs. 679. Another case concerned a plaintiff who was injured in a store by being struck when another customer in the defendant's store threw a "block" on a "shoplifter" who had escaped from the custody of two of the store's employees. *Scott* v. *Allied Stores of Ohio, Inc.,* 96 Ohio App. 532.

The above cited proposition of law is not applicable here. There is a factor present in this case that is not present in the above cited cases, and this is the natural force of gravity. The

proprietor planned his picnic grounds so that motor vehicles would be parked on an incline without making any provision for the effect of the pull of gravity on such motor vehicles. Such parking is hazardous to pedestrians who are below the point where motor vehicles are parked on an incline, and his duty of exercising due care for his patrons at a lower level requires that he provide safe and secure parking of the motor vehicles present at a higher level on the incline.

The proprietor cannot escape liability by attempting to shift the responsibility onto the person who parked his motor vehicle on the incline. Such a person would also be liable in case he was also negligent, but it would be a shared responsibility, because the proprietor had contributed to this hazardous condition from which this liability arises by directing or permitting the parking of motor vehicles on an incline.

The trial court cited as authority for its decision the case of *Hersch* v. *Anderson Acres, Inc.*, 77 Ohio Law Abs. 201, the second paragraph of whose headnotes is as follows:

"The owner and operator of a camp site or of a resort where cottages and trailer spaces are rented is under no common law duty to warn the tenant of the existence of poison ivy, poison oak or other noxious weeds on the premises and further he is under no duty to remove said weeds from the premises when they grow and exist there."

The court in *Hersch* v. *Anderson Acres, Inc.*, 77 Ohio Law Abs. 201, stated that a city dweller who chooses to spend his vacation in the great outdoors must assume the risks of the natural hazards of outdoors such as flies, mosquitoes, snakes and poison ivy.

Although gravity is a natural force, it is not a hazard until an object with some weight is placed at a higher point under conditions that the pull of gravity would cause it to roll down in the direction of pedestrians located at a lower point. Parked automobiles on an incline are not natural hazards. They can only become hazards by the action of someone putting them there. In the instant case, an automobile was parked on the incline because a patron of the picnic ground parked it there on the implied or express direction of the owner of the picnic ground.

In this case, defendant admits in his answer that he did not provide any parking lot in connection with the picnic grounds and did not regulate or control the parking of cars by patrons and that the car that struck plaintiff was parked approximately sixty feet up the slope from where plaintiff's table was located.

We hold that plaintiff's petition states a cause of action against defendant.

There is still the issue of whether defendant's negligence proximately caused the injuries of the plaintiff.

Defendant in his answer alleges that plaintiff knew, or in the exercise of ordinary care should have known, that she would be exposed to the risk of the automobile rolling down the slope of this picnic ground, and that plaintiff assumed the risk of injury. This would be a question for the jury, under the facts of this case.

The judgment is reversed, and the cause remanded for a new trial in accordance with this opinion.

*Judgment reversed.*

JOHNSON, P. J., concurs.
JONES, J., concurs in the judgment.