HENKEL, and another, Appellants, v. PHILLIPS, and others, Respondents.

*No. 75–712. Submitted on briefs November 2, 1977.—
Decided January 3, 1978.*
(Also reported in 260 N.W.2d 653.)

For the appellants the cause was submitted on the brief of *Conrad H. Johnson* and *Schlotthauer, Johnson, Mohs & Rusch* of Madison.

For the respondents the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, *LeRoy L. Dalton*, assistant attorney general, and *Eugene O. Gehl*, of counsel, of Madison.

ABRAHAMSON, J. This appeal requires a determination of the validity of the regulation adopted by the Board of Regents of the University of Wisconsin as U.W. 1.04(6),[1] Wisconsin Administrative Code:

"Motor vehicles parked in a restricted parking area without a permit or motor vehicles parked in a fire zone, fire lane, loading zone, or no parking zone, and unlicensed or partially dismantled motor vehicles may, at the owner's expense, be towed off university premises and stored . . ."

In January, 1975, Jane Henkel and Jess Anderson, employees of the University of Wisconsin, Madison, commenced a class action on behalf of all persons whose illegally parked motor vehicles had been towed from the University of Wisconsin, Madison campus. Alleging that the members of the University of Wisconsin Board of Regents and the Director of Parking and Transportation for the University of Wisconsin, Madison (hereinafter referred to as the Board of Regents) had no statutory authority to adopt or enforce regulations providing for the towing and impounding of vehicles illegally parked on the Madison campus, the employees sought $50,000 in damages and a permanent injunction restraining the Board of Regents from further enforcement of U.W. 1.04(6).

In their amended complaint, the employees urged three bases for the alleged invalidity of U.W. 1.04(6):

[1] 1.04(6) has been repealed and replaced by U.W.S. 18.05, Wis. Admin. Code, which became effective April 1, 1976. U.W.S. 18.05 is a virtually identical reenactment of 1.04(6).

(1) that the strict conformity requirement of the Motor Vehicle Code prohibits the Board of Regents from adopting regulations permitting the towing and impounding of vehicles illegally parked on the Madison campus; (2) that the Board of Regents has statutory authority to impose only fines for violations of University parking regulations; and (3) that because U.W. 1.04(6) is enforced in a discriminatory manner, the employees have been denied equal protection of the law.

Subsequent to the filing of the amended complaint, the allegations of the third cause of action were withdrawn. Accordingly, this court shall disregard the employees' attempt on this appeal to support contentions of the complaint with allegations that U.W. 1.04(6) is selectively enforced.[2]

On July 8, 1975, the Board of Regents demurred to the amended complaint on the ground that it failed to state a cause of action. The circuit court sustained the demurrer and by order issued December 29, 1975, dismissed the action. We affirm the trial court's order.

There is no merit to the employees' contention that a regulation permitting the towing and impounding of vehicles illegally parked on the Madison campus contravenes sec. 349.03(1), Stats., which provides:

"(1) Chapters 341 to 348 and 350 shall be uniform in operation throughout the state. No local authority may enact or enforce any traffic regulation unless such regulation:

[2] *Estate of Rosenstein*, 47 Wis.2d 494, 177 N.W.2d 372 (1970) ("Upon a demurrer, a court may not add factual matters as an allegation to a complaint to aid or defeat it"); *Estate of Mayer*, 26 Wis.2d 671, 679, 133 N.W.2d 322 (1965) ("A demurrer cannot be aided by facts appearing in the record but which do not appear upon the face of the complaint.")

"(a) Is not contrary to or inconsistent with chs. 341 to 348 and 350; or

"(b) Is expressly authorized by ss. 349.06 to 349.25 or some other provision of the statutes."

The employees argue that U.W. 1.04 (6) must fall because it is neither expressly authorized by the statutes, nor in conformity with chs. 341 to 348 and 350. This argument misconceives the scope of the Motor Vehicle Code. Even if we agreed that the Board of Regents is a "local authority" under sec. 349.03 (see definition in sec. 340.01 (26), Stats.), we could not agree that the Board is promulgating "traffic regulations" as the term is used in sec. 349.03, Stats., contrary to or inconsistent with the specified chapters of the statute. Traffic is defined in sec. 340.01 (68), Stats., to mean, ". . . pedestrians, ridden or herded or driven animals, vehicles and other conveyances, either singly or together, while using any *highway* for the purpose of travel." (Emphasis added.) The roads on the University of Wisconsin, Madison campus are not highways as that term is defined in sec. 340.01 (22), Stats.; rather they are "private roads or driveways" within the definition of sec. 340.01 (46), Stats.[3] This distinction is significant since most provisions of the Code apply only to highways. *Stamberger v. Mattaidess*, 37 Wis.2d 186, 192, 155 N.W.2d 88

[3] Prior to merger in 1973, the University of Wisconsin and the state university systems were governed, respectively, by Chs. 36 and 37 of the statutes, and the Motor Vehicle Code included within its definition of "private road or driveway" the roads on the University of Wisconsin, Madison campus (Ch. 36 institution), but not the roads on the state university system campuses (Ch 37 institutions). Section 340.01(46), Stats. 1971, provided that a private road or driveway was ". . . every road or driveway upon the grounds of public institutions other than those under the jurisdiction of the board of regents of the university of Wisconsin system under ch. 37 . . . ." After merger, sec. 340.01(46) was amended to include within the definition of "private road or driveway" all of the roads of the single University of Wisconsin system.

(1967) ; *Lemke v. Guse,* 26 Wis.2d 80, 83–84, 131 N.W.2d 893 (1965). The towing regulation in the case at bar does not contravene sec. 349.03, Stats.

There is likewise no merit to the employees' contention that the Board of Regents has statutory authority to impose only fines for violations of University parking regulations. The employees base their contention upon the theory that sec. 36.11(8), Stats., provides the exclusive means by which University parking regulations shall be enforced.[4] Section 36.11(8) states:

"(a) The board [of regents of the University of Wisconsin system] may make general policies and shall authorize the chancellors to adopt rules regulating the parking of motor vehicles on property under their jurisdiction . . .

"(b) The board shall establish fines for the violation of any rule made under par. (a) . . ."

The employees argue that by expressly designating that fines be imposed for violations of rules made pursuant to sec. 36.11(8)(a), Stats., the legislature impliedly proscribed the sanction imposed by U.W. 1.04(6).

The theory embodies a twofold error. First, the employees misconstrue the purpose of sec. 36.11(8)(b), Stats. Section 36.11(8)(b) prescribes the sanction the Board of Regents shall establish for violation of rules adopted by the chancellors pursuant to the authority with which the chancellors are vested by sec. 36.11(8)(a). The towing and impounding described in U.W. 1.04(6) is not provided as a penalty for violation of a rule of the chancellor. U.W. 1.04(6) was enacted to effectuate the powers of the Board of Regents.

---

[4] Plaintiffs also contend that prior to the enactment of sec. 36.11(8), Stats. in 1973, sec. 37.11(16)(b), Stats. provided the exclusive sanction for violations of University of Wisconsin, Madison parking regulations. That contention is without foundation. As has been explained in note 3, *supra,* the provisions of Ch. 37 have not governed the University of Wisconsin, Madison campus.

Second, the employees fail to recognize that the Board of Regents' authority to regulate the parking of motor vehicles on University property is not limited to the powers granted by sec. 36.11(8), Stats. Subsection (8) is but one of the many statutory provisions which together comprise the broad powers conferred upon the Regents by virtue of ch. 36, Stats. It is within the context of the Board of Regents' broad authority to govern the University that U.W. 1.04(6) must be viewed.

Pursuant to the authority vested in the Board of Regents by sec. 36.06, Stats.[5] (prior to 1973) and by sec. 36.11(1), Stats.[6] (since 1973), the Regents have designated areas of University property which shall be kept clear for ingress or egress and areas in which only selected groups of people shall be entitled to park. For example, U.W. 1.04[7] contains the following provisions:

[5] *See, e.g.*, ORDER OF THE REGENTS OF THE UNIVERSITY OF WISCONSIN REPEALING AND CREATING RULES, December 18, 1970:

"Pursuant to authority vested in The Regents of the University of Wisconsin by Section 36.06 Wisconsin Statutes, The Regents of the University of Wisconsin hereby repeal and recreate rules in the Wisconsin Administrative Code, as follows:

"1. Chapter UW 1 is hereby repealed, and recreated to read as follows: . . ."

[6] *See, e.g.*, ORDER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM REPEALING AND ADOPTING RULES, February 6, 1976:

"Pursuant to authority vested in the Board of Regents of the University of Wisconsin System by Section 36.11(1), Wis. Stats., the Board of Regents of the University of Wisconsin System hereby repeals Chapters WSC 1 through 4, Chapter SU 5 and Chapter UW 1, Wisconsin Administrative Code, and adopts the attached rules, relating to conduct on lands owned or under the control of the Board of Regents of the University of Wisconsin System, as Chapter UWS 18, Wisconsin Administrative Code."

[7] Essentially the same provisions are now contained in UWS 18.05, Wis. Admin. Code.

"(1) Parking is prohibited at all times on roads, drives, and fire lanes traversing university parks and on all university lands, except that the president of the university, or his designated representative, and the chief administrative officer or his designated representative, are authorized to establish parking areas, parking limits, and methods of parking, on the campuses under their jurisdiction, and may designate parking areas for specific groups at specific times, providing such areas are properly posted and patrolled as parking areas.

"(2) Except as provided in subsection (3), parking in university parking areas is prohibited to other than persons specifically assigned to such areas; and motor vehicles so assigned to any parking areas shall be identified by an appropriate parking permit affixed to the vehicle as designated by the president of the university, or his designated representative, or by the chief administrative officer, or his designated representative.

"...

"(4) Parking is prohibited at all times in areas which must be kept clear for the passage of fire apparatus. Said areas shall be designated by standard signs reading 'Fire Zone, No Parking at Any Time, Day or Night.'

"(5) Parking is prohibited at all times in areas which must be kept clear for vehicles to load and unload. Such areas shall be designated by appropriate signs.

"...

"(7) Parking in university parking areas shall be prohibited as required for reasons of needed repair and snow removal."

U.W. 1.04(6), the towing provision in issue here, was also adopted pursuant to the broad powers granted to the Regents by sec. 36.06, Stats. (prior to 1973) and by sec. 36.11(1), Stats. (since 1973).

By sec. 36.11(1)(a), Stats., the legislature has authorized the Board to "adopt rules under ch. 227 to protect the lives, health and safety of persons on property under its jurisdiction and to protect such property and to prevent obstruction of the functions of the

system."[8]  By sec. 36.11(1)(c), Stats., the Board of Regents is further given the authority to adopt rules under ch. 227 "for the management of all property under its jurisdiction, for the care and preservation thereof and for the promotion and preservation of the orderly operation of the system in any or all of its authorized activities and in any or all of its institutions . . ."[9]  The legislature has clearly placed "the primary responsibility for governance of the system" in the Board "which shall enact policies and rules for governing the system,"[10] and has granted to the Board "all powers necessary or convenient for the operation of the system except as limited" by ch. 36.[11]

We are unwilling to say that the Board of Regents, endowed with this broad authority, is powerless to adopt regulations authorizing the towing of improperly parked vehicles on University property.

In *State ex rel. Priest v. The Regents of the University of Wisconsin*, 54 Wis. 159, 169, 170, 11 N.W. 472 (1882), we recognized that the legislature had granted powers to the Regents in terms which "are in themselves of sweeping impact" and accompanied these powers with "implied powers." We concluded that the Board of Regents may "choose the means which in their judgment are necessary or convenient, provided only they are calculated to accomplish the objects sought by the charter and within the scope of the general powers granted, and not in conflict with the statute."

---

[8] Prior to 1973, the powers conferred by sec. 36.11(11)(a), Stats. were contained in sec. 36.06(1), Stats., 1971.

[9] Prior to 1973, the powers conferred by sec. 36.11(1)(c), Stats., were contained in sec. 36.06(3), Stats., 1971.

[10] Sec. 36.09(1), Stats.

[11] Sec. 36.09(1)(k), Stats. Prior to 1973, the Regents were granted "all powers necessary or convenient to accomplish the objectives and perform the duties prescribed by law" by sec. 36.03(1), Stats., 1971.

The Regents enacted parking regulations in U.W. 1.04 pursuant to its express powers "to protect lives, health and safety of persons," "to manage and protect property under its jurisdiction," "to prevent obstruction of the functions of the system," and "to preserve and promote the orderly operation of the system in its authorized activities."

Clearly, the designation of areas on University grounds where parking is permitted and prohibited constitutes management of University property. *Drysdale v. University of New York at Stony Brook*, 60 Misc.2d 180, 302 N.Y.S.2d 882, 884 (1969).[12] Property management is a power expressly granted to the Board of Regents. The Regents enacted the towing regulation under its implied power to adopt measures which are necessary and proper to carry out its enumerated powers.

The statutes do not expressly prohibit towing on University lands. Towing is a usual method chosen by governmental units to protect the community from the hazards and inconveniences of illegally parked vehicles.[13] As this suit is itself testimony, a system of fines is not

[12] "It is too late in the motor age to contend successfully that parking facilities are not a necessary adjunct of the proper use of improved real estate. One does not have to travel far to see their inevitable presence at modern shopping centers, factories, schools, churches, apartments and even private residences. A place to park an automobile is indispensable to its use. The larger businesses and institutions find it necessary to provide parking facilities for the persons with whom they deal since streets are no longer adequate or available for that purpose." *Missouri v. Neill*, 397 S.W.2d 666 (Mo. 1966).

[13] *See, e.g.*, sec. 349.13(3), (4), Stats.; sec. 12.1331, City of Madison Ordinances; *Annot., Validity, Construction, & Application of Statute or Ordinance for Removal of Automobiles Parked in the Street Contrary to Regulation*, 163 ALR 966 (1946); McQuillin, 7 Municipal Corporations, sec. 24.628 (1968 Rev. vol.); Matthews, 2 Municipal Ordinances, sec. 38.11, 38.12 (1973); Rhyne, Municipal Law, sec. 19–31 (1957).

alone sufficient to assure ingress, egress and limited parking on the property the Regents are authorized— and indeed bound—to manage.

For the reasons stated herein, we conclude that U.W. 1.04(6) embodies a valid exercise of the authority vested in the Board of Regents by the legislature. The complaint alleging that vehicles have been towed pursuant to the University regulation fails to state a cause of action.

*By the Court.*—Order affirmed.